## DALLAS JOINT STOCK LAND BANK v. KING et al.

### No. 14454.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 27, 1942.

Rehearing Denied Jan. 8, 1943.

Lawther & Cramer, of Dallas, for appellant.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellee Southwestern Life Ins. Co.

Marshall & King, of Graham, for appellee B. W. King.

McDONALD, Chief Justice.

B. W. King brought this suit to cancel a note and a lien, securing same, covering 200 acres of land owned by plaintiff. A brief history of the material events leading up to this suit is as follows:

In 1928 one Gameson, then the owner of the land, executed a note for $4,000 in favor of the Dallas Joint Stock Land Bank of Dallas, and to secure it executed a deed of trust covering the land in question. In January, 1934, J. M. King, a brother of the plaintiff, had acquired the land subject to the above indebtedness. B. W. King, the plaintiff, held a second lien against the land. The Land Bank Note was payable in thirty-seven annual installments of $270 each, due on November 1st of each year, which were applicable first to accrued interest, then to principal. Several installments being in arrears in January, 1934, the Land Bank brought suit to foreclose the lien, including J. M. King and B. W. King in the suit as parties defendant. Negotiations between B. W. King and the Land Bank followed, as a result of which B. W. King paid the sum of $1,000 to the Land Bank, and the Land Bank in turn dismissed the suit and released a notice of lis pendens which had been filed in Young County. Sometime thereafter B. W. King acquired the land, subject to said lien, and paid the annual installments falling due in 1935, 1936, 1937 and 1938. In 1939 the note and lien were transferred to the Southwestern Life Insurance Company.

B. W. King filed the present suit against the Southwestern Life Insurance Company. The first count of his petition is in the customary form of trespass to try title. He further alleges that the note has been fully paid and discharged, and in the alter-

native, that it has become barred by the four year statute of limitations, basing the latter claim upon the theory that the entire note became due and payable in 1934, when the Land Bank declared it due and filed suit, and that more than four years has expired since that time.

The Insurance Company answered by plea of not guilty and by general denial, and by cross-action, or plea over, impleaded the Land Bank, alleging that the latter had warranted the note and lien to be valid, and praying for judgment against the Land Bank in the event plaintiff should recover judgment canceling the note and lien.

The answer of the Land Bank alleges that after the foreclosure suit was brought in 1934, the parties settled same, that the declaration accelerating the maturity of the note was waived, and that the note was reinstated.

In a supplemental petition plaintiff alleges that on November 1, 1935, he tendered payment of the unpaid balance on the note, but that the Land Bank refused to accept payment, and that such actions had the effect of stopping the running of interest on the note after that date.

The jury was waived at the close of the evidence. The trial court denied any recovery to the plaintiff, save to decree that the tender of payment made by him on November 1, 1935, was sufficient to stop the running of interest on the note. He also decreed that the Insurance Company recover judgment against the Land Bank for interest at the rate of six per cent per annum from November 1, 1935, to the date of the judgment, on the balance which was owing on the note on November 1, 1935.

Both the plaintiff King and the Land Bank have appealed. King charges that the judgment is erroneous in denying him a cancellation of the note and lien. The Land Bank charges that the judgment is erroneous in decreeing that the interest on the note was stopped by the tender made in 1935.

We shall first discuss the portion of the judgment decreeing that the interest stopped in 1935. Although error is not assigned on such ground, it is apparent from the face of the record that this portion of the judgment is nothing more than a declaratory judgment, which is not authorized in our practice. It is to be observed that the holder of the note did not file a cross-action seeking judgment on the note or foreclosure of the lien. Nor did plaintiff in his pleadings allege that he owed only a certain amount on the note, and then seek a decree compelling the holder of the note to accept such sum in full satisfaction of the note. The only decree rendered here is that interest for a certain period is not recoverable on the note. The judgment declares the rights of the parties, without decreeing enforcement of them. Under the pleadings of the parties, the trial court had authority to cancel the note and lien, or to refuse to do so, and nothing more. It follows that the judgment in favor of the Insurance Company against the Land Bank is premature.

The remaining question is whether the undisputed evidence shows that the note and lien are barred by limitations. The trial court having, in effect, found to the contrary, his judgment must be sustained if there is any evidence of probative value to support such a finding.

The authorities appear to support the proposition that the interested parties may, after a note has been declared all due under a provision giving the holder the option to do so, waive or rescind such action so as to reinstate the note and make it payable again according to its original terms.

In 34 American Jurisprudence 151, it is said: "It seems to be generally agreed that an election, pursuant to an optional acceleration provision in a promissory note to declare the note due upon some default of the promissor, when once made, may be waived or rescinded."

The leading case in Texas upon the subject is San Antonio Real-Estate, Building & Loan Ass'n v. Stewart, 94 Tex. 441, 61 S.W. 386, 389, 86 Am.St.Rep. 864, in which the Supreme Court says: "But, aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case. Bish. Cont. § 789–808; Bigelow, Estop, p. 633

et seq.; [Merchants' Mut.] Ins. Co. v. Lacroix, 45 Tex. 158; [St. Paul Fire & Marine] Ins. Co. v. McGregor, 63 Tex. [399], 404. An agreement or waiver having the effect supposed may be inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations."

Other cases in which the rule is recognized are: City Nat. Bank v. Pope, Tex. Civ.App., 260 S.W. 903; Wemple v. Brigance, Tex.Civ.App., 282 S.W. 645; Cofer v. Beverly, Tex.Civ.App., 184 S.W. 608; Manes v. Bletsch, Tex.Civ.App., 239 S.W. 307; Diamond v. Hodges, Tex.Civ.App., 58 S.W.2d 187.

After the suit was filed in 1934, B. W. King, the plaintiff in the present suit, wrote the Land Bank a letter in which he said:

"I will pay you $1000.00 on this loan $200.00 of which can be applied as Attorneys fees and court costs and the balance as interest and principal which will put this loan two or three years in advance and give the boy time to get on his feet.

"I want to hear from you on this proposition at once."

A representative of the Land Bank wired a reply saying that he thought he could get the matter adjusted if King would send a cashier's check that day.

King wrote a letter in reply to this wire, in which he enclosed a cashier's check for $1,000, and in which was contained the following direction: "$200.00 is to be applied to attorneys fees and court costs. The balance to principal and interest on the loan. The original loan bearing interest at 6 per cent, and the past due installments at the rate of eight per cent."

The letter also requested that a statement be sent to King showing how the credits had been applied.

It seems to us that the trial court could reasonably infer from the above-quoted language that King agreed that the loan should be reinstated according to its original terms. The first letter mentions paying the loan two or three years ahead. That could only be upon the theory that installments were to fall due in the future. In another letter, written a few days later, King directed that notices be sent to J. M. King in care of B. W. King. The trial court could reasonably infer that reference was being made to notices of future installments.

After the Land Bank refused to accept the sum tendered by King in November of 1935, in full payment of the balance on the loan, King wrote the Bank, saying that if the Land Bank would send him a written refusal of the tender, King would "remit the installment due as of November 1st". B. W. King had acquired the land from his brother in the early part of 1935. He paid the annual installments falling due on November 1, 1936, 1937 and 1938. There appears in the statement of facts his letter transmitting the 1937 installment, which reads as follows: "Herewith enclosed you will please find my check for $270.00 in payment for installment due November 1 on G. M. Gameson Loan No. 010299 on East 200 acres of T. E. & L. Survey No. 296, Young County, Texas. This is paid under protest. This indebtedness is not due or just and I make no admission that the said indebtedness or any part thereof is due and owing as claimed by you."

While the plaintiff insists that the evidence shows that he never agreed to the rescission or waiver of the acceleration of the maturity date of the note, we are required here to consider only such of the testimony as tends to support the judgment rendered below. As said by the Supreme Court in the Building & Loan case, supra, 61 S.W. 386, the waiver may be inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations.

The plaintiff argues that after the loan was declared due, it could be extended so as to be again payable on the original basis only by executing a written extension of the indebtedness, as provided by Art. 5522, R.C.S. He also argues that any oral agreement to reinstate the loan upon the original basis would be in violation of Art. 5539, which provides that the acknowledgment of an indebtedness, to take it out of the statute of limitations, must be in writing and signed by the party to be charged. The latter contention was made in the Building & Loan case, supra, 61 S.W. 386, and was overruled by the Supreme Court. An examination of the authorities above cited will show that the courts have not treated such waivers or retractions as the kind of extensions of liens contemplated by the terms of Art. 5522. After the waiver or retraction takes place, it is as if the maker had never declared the note due.

The judgment of the trial court is reversed, and the cause is remanded to the

trial court with instructions to render judgment that plaintiff take nothing by his suit, and that the Insurance Company take nothing by its plea over against the Land Bank. All costs are adjudged against the plaintiff King.